SAMUEL SWIFT, ADMR. *v.* RECTOR & GUY GAGE.

*Ejectment. Possession. Landlord and Tenant.*

The possession of a portion of a lot of land, claiming the whole, gives color of possession, which in construction of law, is possession itself.

A tenant, who is in possession of land under the landlord, cannot surrender or transfer the possession of the same, without the consent of the landlord, to a third person, so as to defeat the title of his landlord.

And occasional acts of turning in cattle, and cutting timber, while the landlord and his tenants maintained the exclusive possession of the land, will not defeat the possession of the landlord, as such acts under such circumstances, only amount to trespasses.

EJECTMENT for certain lands in Addison. Plea, general issue, and disclaimer by Rector Gage, one of the defendants, and trial by jury.

On the trial the plaintiff offered in evidence seven deeds from sundry persons to the intestate and his grantees, (but neither party made out a perfect paper title.)

The plaintiff also offered evidence tending to prove, that lots Nos. 42 and 43, in Addison, were adjoining lots; No. 43, lying north of 42, and that they were bounded on the west by Dead Creek, that there was a stang set up from Dead Creek, into, and nearly across, lot 43, upon its southern part; that the plaintiff's intestate, previous to 1824, claimed and occupied lands adjoining lots 42 and 43, and that in 1824, he caused a fence to be erected from the east end of the stang, to a fence previously erected on the north side of his premises, so as to enclose lot No. 42, and that part of lot No. 43, lying south of the stang; the Dead Creek on the west, and the stang on the north, with the fence so erected constituting the fence on those sides; and put one Wilkins into possession of the premises so enclosed; and that a short time after, plaintiff's intestate hired the lot to one Woodward, who occupied the same till 1830, when Woodward surrendered the possession of the land to one George A. Gage, as the agent of Friend Adams, intestate, who occupied the same, as the agent or tenant of said Friend Adams, or his administrator, until the alleged eviction by the defendants.

The plaintiff's evidence further tended to show, that in 1830, Gen. Samuel Strong claimed to own to No. 43, and that Woodward had occupied a part of that lot, under Samuel Strong, before that time. That at that time Samuel P. Strong and Enoch D. Woodbridge, the agents of Samuel Strong, went on to the premises, for the purpose of taking from Woodward possession of lot No. 43; that George A. Gage, as the agent of Friend Adams, and Woodward were present. S. P. Strong, for his father claimed the whole of lot No. 43, and contended that Woodward should give him possession of the whole lot; but said Gage claimed to be in possession of the land south of the stang for Friend Adams, and that S. P. Strong never had any possession south of the stang.

The defendants introduced in evidence a copy of the distribution of John Strong's estate, recorded in Addison, in May, 1833, and also several deeds from persons to them and their grantors.

It was admitted that Samuel P. Strong is the residuary legatee of Samuel Strong, and that all the title to the premises that Samuel Strong had at his death, vested in Samuel P. Strong.

The defendants also introduced evidence tending to prove, that after the conveyance from Samuel P. Strong to one Samuel

B. Booth, under whom they claimed, that the tenants of said Booth turned in cattle south of the stang, and endeavored to get possession, but George A. Gage would turn them out, and claimed the land south of the stang; that Booth's tenants occasionally cut wood south of the stang.

The defendants contended, (and some of the evidence tended to prove,) that George A. Gage was not the tenant or agent of Friend Adams, in relation to lot No. 43, or any part of it. Other parts of the evidence tended to prove, that George A. Gage claimed to hold possession of all the land south of the stang for Friend Adams, and that said Adams claimed that said Gage held possession of the land under him.

The court,—PIERPOINT, J., presiding,—charged the jury, that the evidence in the case did not prove a paper title in the premises in either party; but if Friend Adams, having a deed of lot No. 43, on record in the town of Addison, went into possession by himself, or his agent, of any part of the lot, his possession would extend to the boundaries of the lot, unless some other person was previously in possession of the same lot, or some part of it; and unless such other person held some claim of title on record in the town clerk's office, his possession would not extend beyond his actual occupancy; and if Wilkins took possession of the premises as the agent or tenant of Friend Adams, and surrendered it to Woodward under a contract to hire it of Adams, Woodward's possession would be the possession of Adams, as long as he continued in possession, and that Woodward, without the knowledge of Adams, could not transfer the possession to a third person so as to defeat the rights of Adams; and if George A. Gage, went into possession of the land, as the agent or tenant of Friend Adams, at the time Woodward surrendered possession to Strong, and Strong so understood it, at the time he took possession from Woodward, of the land north of the stang, and Gage so remained in possession until Strong deeded to Booth, and Strong knew that Adams claimed to be in possession adverse to him, then Strong's deed to Booth, as against Adams and those claiming under him, is void, and gave Booth no right against them. And if George A. Gage remained in possession under Adams or his representatives, up to the time that Guy Gage took his deed from Booth, and Booth had been unable to get possession of the

land, the deed from Booth to Guy Gage is void, and gave him no right to enter and oust the plaintiff, and the plaintiff is entitled to recover for such ouster; and that occasionally turning in cattle by Booth or his tenants, the same being turned out by Gage, or occasionally cutting wood on the south side of the stang, would not defeat the plaintiff's right of recovery.

The jury returned a verdict for the plaintiff, as against Guy Gage, and not guilty as to Rector Gage.

*P. C. Tucker* for defendant.

Neither party had any perfect paper title to lot No. 43.

It is claimed for the defendant:

I. That the fence made by Adams or his tenant in 1824, did not constitute such an enclosure of the south part of lot No. 43, as to amount to taking possession of the land.

II. That Adams' putting Wilkins into possession generally of lands, which happened accidentally to be enclosed by a creek and stang, including among them a part of lot No. 43, would not give him any possessory right to lot 43, if he had no legal title of record to it, and made no specific adverse claim to be its owner; and that such a possession passed by Wilkins to Woodward, and by Woodward to George A. Gage, would not (even if George A. Gage was Adams' agent, which is left doubtful by the case,) operate to make a title by possession in Adams.

III. That if Adams even commenced a possessory claim to the north part of lot No. 43, in 1824, the possession being disputed by Strong's claim in 1830, and Woodward having been in possession under Strong of part of the lot previous to 1830, the possession of the lot thereby became a mixed possession, which would not operate to make a title in either.

IV. That the possession continued to be such a mixed possession after Booth purchased of Strong.

V. That it was not necessary that the claim of record, arising from the distribution of John Strong's estate, should be of record in *the town clerk's office of the town of Addison,* in order to protect any possession claimed under it, beyond " actual occupancy."

VI. That Samuel P. Strong's deed to Booth was not void by reason of the adverse claim of Adams, as set forth in the exceptions. Woodward's possession of part of lot No. 43, under Strong,

was sufficient to prevent Strong's deed from being nugatory, while the title to the lot was in dispute between Strong and Adams. Nor was Guy Gage's deed.from Booth void, for the same reason.

*F. E. Woodbridge* and *J. Pierpoint* for plaintiff.

The case shows that Friend Adams went into possession of the premises under color of title, enclosing and claiming the same in 1824. His possession was of a character that would have enabled an actual owner to have maintained either trespass or ejectment against him.

Woodward being in possession under Adams, could not transfer the possession to a third person without Adams' knowledge, upon the well settled principle, that a tenant cannot divest himself of that relation to his landlord without actual notice.

Strong's deed to Booth, and Booth's deed to Guy Gage, under the circumstances detailed in the bill of exceptions, are void. Comp. Stat. chap. 63 § 29.

The occasional turning in of cattle by Booth, the same being turned out by the agent of Adams, or the occasional cutting of wood upon the premises, do not amount to acts of possession, but mere acts of trespass; and that, even though Booth had a deed of the premises. In this case Booth had no color of title, his deed being recorded in 1849, twenty-five years after actual possession by Adams. *Doolittle* v. *Linsley*, 2 Aik. 155.

The opinion of the court was delivered by

REDFIELD, Ch. J. It is probable that one proposition, laid down in the charge to the jury, is expressed in somewhat too broad terms, to be applicable to all cases coming within its terms. For it is now perfectly well settled, that a possession of a portion of a lot of land, claiming the whole, gives color of possession, which, in construction of law, is possession *itself*; and that to produce the effect, it is not requisite that the claim should be, by deed, recorded in the proper office, or that it should be, even by a deed, containing all the statute requisites to convey land. It is enough, that it be in writing, capable of being produced on request, or even that it be distinctly indicated upon the land by unequivocal monuments, which would not fail to attract the attention

of counter claimants. I have so often enumerated the authorities upon this subject, that it is scarcely needful for me to repeat them here. If this portion of the charge could have misled the jury, the defendants would doubtless be entitled to a new trial.

But it seems to us, the case must be regarded as altogether clear for the plaintiff, upon the facts detailed in the case, and in regard to which, there seems no controversy.

Adams and his tenants had been in uninterrupted possession of the portion of land, lying south of the stang, and that is all the land in controversy in the case, from 1824 when it was vacant, until the eviction, and no perfect title claimed to have been shown in the defendants. The defendants claim in one of two modes: 1. That Adams' tenant surrendered the possession to those from whom the defendants derive title. But this a tenant has no power to do without the consent of his landlord, and there is no pretense of any such consent.

If any such thing were attempted it would still leave the possession in the plaintiff's intestate, and he could maintain ejectment against any one going into possession under any such arrangement, at any time within fifteen years after it came to his knowledge.

2. It is claimed that the occasional acts of turning cattle into the lands, and cutting timber, which were at the time strenuously resisted by Adams and his tenants, who all along maintained the exclusive possession of the land, constituted such a joint possession of the land, as will defeat the effect of Adams' prior possession. But it is obvious that such acts, under the state of facts existing, could only amount to trespasses, and did not give any possession in fact, or in law.

We think, therefore, the judgment must be affirmed.